1  MORGAN, LEWIS & BOCKIUS LLP
   Robert A. Lewis (SBN 83630)
2  robert.lewis@morganlewis.com
   Frank Kennamer (SBN 157844)
3  frank.kennamer@morganlewis.com
   Geoffrey T. Holtz (SBN 191370)
4  geoffrey.holtz@morganlewis.com
   Kristen A. Palumbo (SBN 215857)
5  kristen.palumbo@morganlewis.com
   One Market, Spear Street Tower
6  San Francisco, CA 94105
   Telephone:  415-442-1000
7  Facsimile:  415-442-1001

8
   Attorneys for Plaintiff
9  ADP, LLC

10

11                    UNITED STATES DISTRICT COURT

12                 NORTHERN DISTRICT OF CALIFORNIA

13  ADP, LLC, a Delaware limited liability company;     No.

14          Plaintiff,                                  **COMPLAINT FOR DAMAGES AND
                                                        INJUNCTIVE RELIEF FOR:**
15       v.

16  YOURPEOPLE, INC., a Delaware corporation            **(1) DEFAMATION;
    d/b/a/ Zenefits Insurance Services, and PARKER       (2) INTENTIONAL INTERFERENCE
17  CONRAD, an individual,                               WITH PROSPECTIVE ECONOMIC
                                                         RELATIONS;
18          Defendants.                                  (3) UNFAIR COMPETITION;
                                                         (4) FALSE ADVERTISING;
19                                                       (5) LANHAM ACT VIOLATION**

20                                                      **DEMAND FOR JURY TRIAL**

21

22

23

24

25

26

27

28

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1            Plaintiff ADP, LLC ("ADP" or "Plaintiff") for its Complaint against Defendants

2    YourPeople, Inc., dba Zenefits Insurance Services ("Zenefits") and Parker Conrad ("Conrad"),

3    an individual (together, "Defendants"), alleges as follows:

4    **I.      INTRODUCTION**

5            1.      Plaintiff ADP brings this lawsuit to seek redress for Defendants'

6    defamatory and unlawful conduct to publicly and falsely malign ADP.

7            2.      For over 60 years, ADP has succeeded in establishing a reputation for

8    client service excellence that places as paramount the client's interest and that rests on the

9    foundation that "integrity is everything."  Unfairly attacking ADP's core values of client service

10   and integrity, Zenefits cavalierly launched a campaign to falsely accuse ADP, without basis, of

11   unethical and anticompetitive behavior.  Among other false accusations, Zenefits alleged that

12   ADP intentionally sought to cause harm to ADP's clients solely to gain an unfair competitive

13   advantage against Zenefits.

14           3.      As set forth in this Complaint, ADP has sought to protect the interests of

15   its clients, in contrast and in response to the irresponsible actions of Zenefits that potentially

16   jeopardize the continuity of service and security protections that ADP's clients rightfully expect

17   of ADP.

18   **II.     THE PARTIES**

19           4.      Plaintiff ADP is a Delaware LLC with its principal place of business in

20   Roseland, New Jersey, duly authorized to do business in the State of California.

21           5.      Defendant Zenefits is a Delaware corporation with its headquarters and

22   principal place of business in San Francisco, California.

23           6.      Zenefits is subject to personal jurisdiction in California because it is

24   subject to general jurisdiction in this forum.  Zenefits is headquartered in San Francisco,

25   California, and its contacts with the state are substantial, continuous and systematic.  In addition,

26   Zenefits is subject to specific jurisdiction here because it has committed wrongful intentional

1

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1   acts in this state, expressly aimed at ADP, and caused harm that it knew or should have known

2   was likely to be suffered by ADP.

3          7.      Defendant Conrad is the co-founder and CEO of Zenefits.  He is a

4   resident of the San Francisco Bay Area and is thereby subject to personal jurisdiction in the state

5   of California.

6          8.      At all material times, through his ownership interest in Zenefits and his

7   role as CEO and President, Conrad had both the right and the authority to control, and had a

8   direct financial interest in, the actions of the corporation.

9   **III.    JURISDICTION**

10         9.      ADP's fifth cause of action arises under the Lanham Act, 15 U.S.C. §§

11  1114 & 1125.  Accordingly, this Court has subject matter jurisdiction over this action pursuant to

12  28 U.S.C. § 1331 and 28 U.S.C. § 1338.

13         10.     This Court has supplemental subject matter jurisdiction over the pendant

14  state law claims under 28 U.S.C. § 1367, because these claims are so related to ADP's claims

15  under federal law that they form part of the same case or controversy and derive from a common

16  nucleus of operative facts.

17  **IV.    VENUE**

18         11.     Venue in this District is appropriate because Defendants are based here

19  and committed a substantial amount of the wrongful acts here, and Defendants caused harm to

20  ADP that it knew or should have known was likely to be suffered by ADP in this District.  As a

21  result, venue in this District is appropriate under 28 U.S.C. § 1400(a).

22  **V.    INTRADISTRICT ASSIGNMENT**

23         12.     Assignment to the San Francisco Division is proper because a substantial

24  part of the events or omissions which give rise to the claims occurred in this county.

25

26

2

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

## VI. FACTUAL ALLEGATIONS

### A. ADP's Services and Its RUN System

13. ADP since 1949 has provided payroll services to companies of all sizes and in all industries. ADP currently has more than 625,000 human capital management clients in more than 100 countries, including clients who choose ADP to provide their payroll services.

14. One of the payroll services offered by ADP is RUN Powered by ADP® (RUN), a proven small business payroll solution developed through ADP's experience and knowledge gained from years of working with nearly 400,000 small businesses. RUN permits a small business to conduct its payroll operations from anywhere via a web browser, mobile app or even via telephone. It permits the employees of the ADP customer business 24-hour, seven-days-a-week access to their pay statements from virtually any leading mobile device. RUN is also fully integrated with other available ADP small business services, including certain retirement plans, time and attendance solutions, health and benefits solutions, workers' compensation premium payment plans and human resource tools.

15. ADP maintains the sensitive payroll data of its customers' employees, such as social security numbers and tax information, on secure servers. RUN uses leading, industry-recognized security safeguards to help protect company and employee information from loss, misuse, unauthorized access or tampering.

### B. Zenefits' Services and Misrepresentations About Integration with ADP

16. Zenefits is a company that sells human resources management services to customers in competition with some of the services offered by ADP. Zenefits does not provide payroll services like those provided by ADP.

17. Approximately 850 Zenefits human resources customers are also ADP payroll service customers. On its website, Zenefits' advertising offers its customers the ability to "[m]anage all your HR – online, in one place." For customers that "[a]lready have payroll,

3

1    benefits, or other HR systems," Zenefits claims to offer potential customers the ability to

2    "[c]onnect them with Zenefits in seconds."  ADP is listed as one of the payroll services that

3    Zenefits can "connect with in seconds."  Additionally, on its "payroll-services" page, Zenefits

4    uses ADP's logo and states: "Zenefits works with all top payroll providers, so there's no need to

5    switch from your favorite system."  On its "payroll outsourcing" page, under the heading

6    "Simplify your payroll," Zenefits says: "Easy admin. Built-in compliance. Instant updates.  All

7    integrated with your favorite platforms."  On its "payroll quotes" page, under the heading "Get

8    quotes from top payroll providers," Zenefits uses ADP's logo and says: "When it comes to

9    payroll, Zenefits works with the best –ADP, …. Updating information in Zenefits keeps it

10   current in your payroll system, too…"

11          18.   Zenefits' statements as to integration with ADP are false and misleading,

12   since Zenefits' system is not integrated with ADP's RUN,  and ADP has never authorized

13   Zenefits to unilaterally use automated systems, without appropriate operational and security

14   reviews by ADP, to access ADP's systems.

15          19.    Zenefits' system is not integrated with ADP RUN through any ADP

16   application programming interface ("API") and does not otherwise interact or sync with ADP

17   RUN in any manner that ADP has reviewed, authorized or approved.

18          20.   Demonstrating that Zenefits' system is not integrated with ADP RUN (and

19   certainly not through any ADP API), commencing as early as March, 2015, Zenefits has sought

20   to gain access to and unilaterally scrape client information from ADP RUN, by convincing ADP

21   clients to grant Zenefits administrative credentials to the client's ADP RUN account.  Zenefits

22   asked ADP clients to set up Zenefits as a payroll admin user for the client's RUN account.

23   Zenefits also asked the ADP client to take a screenshot of the temporary username/password

24   screen for the account and email it to a Zenefits email.   Once Zenefits has gained such admin

25   level access to a client's ADP RUN account, Zenefits uses a screen crawl application to copy

26

4

1   information from ADP RUN to upload into the Zenefits system, as well as to make changes

2   directly into ADP RUN, including through an API.

3           21.    At no time did Zenefits reach out to ADP to discuss Zenefits' specific

4   methodology for accessing and then copying information from ADP RUN, or to implement any

5   alternative, reasonable process for Zenefits to integrate with ADP RUN, including through an

6   API, as ADP has done with other third parties.

7           22.    In May 2015, ADP's SBS business unit identified potential concerns with

8   Zenefits' unilateral method for scraping information from ADP RUN screens.  ADP identified

9   several potential concerns with Zenefits' approach, including clients granting Zenefits admin

10   user credentials to allow Zenefits access to the clients' employee and company data in a manner

11   that may not meet ADP's security standards, and allowing Zenefits to make changes requiring a

12   payroll admin level access.  Based on these concerns, ADP's SBS business unit determined that

13   it could not grant admin access to new Zenefits users until an appropriate third party security

14   review was completed.

15           23.    For mutual clients who had already provided Zenefits with admin level

16   access to the client's ADP RUN account, ADP prepared a communication to such clients to

17   identify several key concerns.  First, ADP explained that Zenefits currently does not actively

18   integrate with ADP RUN and instead utilizes automated technology to update its systems with

19   the client's payroll information.  ADP also advised clients that, with changes in ADP's latest

20   release of ADP RUN, updates may be required by Zenefits to ensure that the client's payroll

21   information is copied accurately.  ADP further advised that, based on ADP's third-party

22   integration standards, ADP intended to conduct a security review of all Zenefits processes and

23   user requests.  Finally, ADP outlined the potential risks with granting any third party admin

24   access to the client's ADP RUN account, and explained that since ADP did not have access to

25   the data Zenefits used, ADP was unable to verify the accuracy of the client's information, which

26   was particularly critical after ADP's May 2015 ADP RUN release.  Accordingly, ADP suggested

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1    to these clients that they closely review the information updated by Zenefits after their RUN

2    accounts were upgraded.  ADP did not make any statement about any consideration to cut off the

3    existing Zenefits admin logins.  On Wednesday, June 3, 2015, ADP pre-loaded this

4    communication into ADP's client email communication tool, for automated issuance on Friday,

5    June 5, 2015.  On Friday, June 5, 2015, ADP's communication tool issued the client

6    communication regarding Zenefits' use of admin user accounts.

7         **C.    Zenefits' Unauthorized Automated Requests on ADP's System
                   Requires ADP to Reject Those Requests**
8

9              24.    Starting in or about March 2015, ADP began to experience significant and

10   sudden increases in remote access requests into its ADP RUN.  From March through May 2015,

11   when such spikes in remote access requests occurred, ADP was required to take measures to

12   prevent disruption of service.  During this time frame, ADP did not identify Zenefits as a source

13   of these spikes or potential service disruptions, although ADP has since determined that Zenefits'

14   automated activity caused these spikes.  From June 3 to June 4, ADP again experienced peaks in

15   ADP RUN system demands and, after investigation, ADP identified Zenefits as the source.

16   Based on the nature and timing of the voluminous requests into ADP RUN, Zenefits' database

17   requests overloaded one of ADP's RUN database clusters and created a serious risk of significant

18   disruption of service in the particular RUN database cluster affected by Zenefits' automated

19   scraping of data.

20             25.    As a result, on June 4, ADP found it necessary to block Zenefits'

21   unauthorized method of extracting data from ADP RUN.  At points during these two days,

22   despite serving less than one quarter of one percent of the clients on the ADP system, Zenefits

23   became responsible for up to 25% of the total user traffic.

24             26.    If ADP had not acted to block Zenefits' activity accessing ADP RUN, the

25   server disruption Zenefits was causing could have resulted in a disruption that would have

26   adversely impacted approximately 84,000 ADP clients whose data was housed in that ADP RUN

1    database cluster.  Had ADP not acted, the impact to the particular server cluster could also have

2    spilled over to affect the broader RUN system, impacting potentially more than 400,000 ADP

3    RUN clients.

4             27.    ADP did not take these actions to protect the ADP RUN system simply

5    because Zenefits caused the issue.  ADP similarly would have blocked the access of any

6    organization or individual who caused the same or similar conditions as Zenefits.

7             28.    The data that Zenefits accessed in this manner included sensitive data of

8    customers' employees, such as payroll and withholding amounts, employee bank information,

9    and retirement and health insurance deductions.  ADP's investigation also revealed that Zenefits'

10    actions worked to un-mask highly confidential client employee information, such as Social

11    Security Number data.  Given that Zenefits is not an ADP RUN integration partner, ADP has not

12    assessed Zenefits' information security, privacy or third-party risk programs that ADP requires

13    for automated access and integration into ADP platforms, and ADP has not tested, validated or

14    approved the access by Zenefits to protected and regulated data.

15             29.    On information and belief, Zenefits' actions and storage of information

16    from ADP's RUN system were done without the knowledge of some or all of Zenefits' clients or

17    such clients' employees, and/or based on an incorrect belief by Zenefits' clients or such clients'

18    employees that Zenefits' system was actively integrated with ADP RUN, with ADP's approval

19    or authorization.

20
21      **D.**    **Zenefits Defames ADP and Interferes With ADP's**
            **Relationships With Its Customers**

22             30.    At approximately 2:15 PDT on June 5, Zenefits commenced a

23    manipulative and malicious public relations campaign, ignoring its own conduct, to defame ADP

24    and drive away ADP's clients.  Zenefits' initial wrongful act was to email a letter from its CEO,

25    Parker Conrad, to the mutual clients of ADP and Zenefits.  This letter contains numerous false

26    statements intended to harm ADP, including the following.

1    31.    The June 5 letter falsely stated to clients that ADP took the protective

2  measures to block Zenefits' automated scraping of data from ADP RUN to protect the continuing

3  service "without your permission."  This statement was false, as ADP's agreements with its

4  customers expressly give ADP the right to take such protective measures to protect continuity of

5  service and sensitive employee data.

6    32.    The June 5 letter falsely claimed that ADP systematically deactivated

7  Zenefits' admin user access to ADP's RUN payroll system because "ADP believes it can one

8  day build software to compete with Zenefits, and in the meantime they would like to do anything

9  they can to impede Zenefits."  No factual basis exists for this claim.

10    33.    The June 5 letter also falsely dismissed ADP's security reasons as "clearly

11  not true," implying that ADP lied about the basis for its actions as pretext for, as Conrad

12  characterized, ADP's "unethical" behavior.  These statements are false, since ADP's statement

13  about security concerns in the communication that ADP sent to clients who gave Zenefits admin

14  user access was not related to the specific protective measure that ADP took on June 4, 2015.

15  Indeed, nothing in ADP's June 5 client communication indicated that ADP would completely

16  block the Zenefits admin user access.  In fact, ADP took the preventive measures to protect all of

17  ADP's RUN clients from Zenefits' careless and unauthorized automated processes by which

18  millions of data requests flooded ADP's systems and potentially put at risk the continuity of the

19  operation of ADP's system.

20    34.    The June 5 letter falsely claimed that ADP's security concerns with

21  Zenefits' access must be untrue because ADP allows other third parties, such as a bookkeeper or

22  accounting firm, to access client accounts on RUN to service mutual clients, stating that "[w]hat

23  Zenefits does is no different."  This statement is false.  It failed to explain to Zenefits' clients that

24  what Zenefits does is materially different, and that when other third parties such as bookkeepers

25  access ADP client accounts, all client data remains within ADP's secure systems.  Moreover,

26  unlike a bookkeeper, Zenefits' purported "integration" with ADP's RUN system is an automated

8

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1    script that simply scrapes client data from RUN, that Zenefits then inputs in some fashion into

2    Zenefits' own systems, which raises potential security and operational concerns.

3              35.    The June 5 letter falsely claimed that "Zenefits is still completely

4    compatible with ADP payroll."

5              36.    The June 5 letter also attempted to interfere with ADP's relationships with

6    its customers.  The June 5 letter contained an offer from Zenefits to pay its customers to switch

7    to another payroll provider.  The June 5 letter stated, "In addition, if you're interested in

8    switching from ADP payroll to Intuit Payroll, we're paying customers $1,000 and helping them

9    to make the switch. We'll include instructions for this in our follow up communication."

10             37.    Zenefits' subsequent wrongful act was to start a sham online "petition" to

11   further damage ADP's reputation and continue to hide the truth about Zenefits' actions.  The

12   June 5 letter referenced and included a link to a "petition" on the website change.org.  The

13   "petition" is a marketing ploy designed to shift blame away from Zenefits, defame ADP and turn

14   ADP's customers against it.  This "petition" contains numerous false statements intended to

15   harm ADP, including the following.

16             38.    The "petition" asserts that ADP "has cut thousands of their small business

17   customers off from using Zenefits to automate their time-consuming payroll administration

18   work. ADP did so without permission from these small businesses, and also without notifying

19   Zenefits, who has partnered with ADP amicably since we were founded."  This statement is false

20   because ADP's agreements with its customers expressly give ADP the right to take such

21   protective measures to protect continuity of service and sensitive employee data.  It is also

22   misleading because ADP has never "partnered" with Zenefits in connection with Zenefits'

23   purported integration with ADP RUN.

24             39.    The "petition" asserts that ADP wants "to do anything they can to slow us

25   down" and that "ADP is using its size and power to block small businesses from using Zenefits

26   today so that they can get a leg up on the competition tomorrow."  This statement is false

1   because ADP took the preventive measures to protect all of ADP's RUN clients from Zenefits'

2   careless and unauthorized automated processes by which significant data requests flooded ADP's

3   systems and put employee data potentially at risk.  Moreover, ADP's protective measures did not

4   "block" any business from using Zenefits in any manner.

5           40.    The "petition" asserts that because of ADP's measures, "an ADP client

6   can set up anyone in the world to administer their payroll – except those with a Zenefits email

7   account."  This statement is false because ADP's protective measures did not prevent any ADP

8   payroll customer from administering its payroll in any manner.

9           41.    The "petition" claims that ADP's protective measures were "unethical"

10  and "anti-competitive."  But ADP's measures, undertaken consistent with its contracts with its

11  customers, were neither "unethical" nor "anti-competitive" but were taken solely to protect

12  ADP's RUN clients from Zenefits' careless and unauthorized automated processes that put

13  ADP's systems and employee data at risk.

14          42.    Zenefits' sham online "petition" gathered 571 "signatures" of current or

15  potential ADP customers and individuals, and Zenefits' false statements engendered at least 60

16  comments supportive of Zenefits and/or disparaging towards ADP from individuals and current

17  or potential ADP customers, including, upon information and belief, comments from individuals

18  employed by Zenefits.

19          43.    The "petition" and some of the negative comments have also been more

20  broadly distributed through other social media channels, including via Twitter and Facebook.

21  This has, in turn, generated an increasing volume of discussion on blogs and digital media

22  forums that have perpetuated Zenefits' false accusations against ADP and generated further

23  negative attacks on ADP's reputation, all premised on the false and misleading statements made

24  by Defendants.  For example, one blog posted an article entitled "ADP intentionally broke its

25  Zenefits integration," which generated further commentary on the blog.  The petition has also

26

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1   generated attention from mainstream news outlets, potentially significantly exacerbating the

2   harm Zenefits has caused ADP.

3            44.     The defamatory email Conrad sent to mutual ADP and Zenefits clients,

4   linking to Zenefits' defamatory "petition," has also created negative reaction from some of

5   ADP's clients.  For example, in response to Conrad's email, one client advised ADP that it was

6   considering switching from ADP to Intuit, citing to Mr. Conrad's email.

7            45.     As a result of Zenefits' false and defamatory statements, ADP has been

8   forced to incur costs to attempt to correct the false statements with its customers and the

9   marketplace, has suffered injury to its reputation and has been informed by customers that they

10   are switching payroll providers on the basis of Zenefits' statements.

11                        **First Claim for Relief**

12               **Defamation (against Zenefits and Conrad)**

13            46.     ADP incorporates by reference each of the allegations in the preceding

14   paragraphs of this Complaint as though fully set forth herein.

15            47.     Defendants made false public statements on both the internet and in

16   communications to customers of ADP, Zenefits and the general public.

17            48.     Defendants' false statements were defamatory because they harm ADP's

18   reputation in the marketplace.

19            49.     Defendants' false statements about ADP were not privileged.

20            50.     Defendants' false and defamatory statements have a natural tendency to

21   injure ADP and caused damages to ADP by harming its reputation in the marketplace and by

22   causing potential customers and other businesses to terminate and/or avoid business relationships

23   with ADP.

24            51.     In making the false statements, Defendants acted with fraud, malice and

25   oppression, entitling ADP to an award of punitive damages.

26

1            **Second Claim for Relief**

2     **Intentional Interference with Prospective Economic Relations (against Zenefits)**

3            52.     ADP incorporates by reference each of the allegations in the preceding

4    paragraphs of this Complaint as though fully set forth herein.

5            53.     ADP has an expectancy in continuing advantageous economic

6    relationships with current and prospective purchasers of ADP's services.

7            54.     These relationships contained the probability of future economic benefit to

8    ADP.

9            55.     Zenefits was aware of these economic relationships.

10           56.     Zenefits intended to interfere with these relationships, and Zenefits knew

11   disruption was substantially certain to result from its conduct.

12           57.     Zenefits' conduct was wrongful by a measure beyond the fact of the

13   interference itself.

14           58.     As a result of Zenefits' wrongful acts, the above-described relationships

15   have been actually disrupted.

16           59.     As a direct and proximate result of Zenefits' actions, ADP has suffered

17   economic harm.

18           60.     Zenefits' actions are likely to recur and will cause ADP irreparable injury

19   for which there is no adequate remedy at law.

20           61.     Zenefits' interference was willful and in conscious disregard of ADP's

21   rights.  Zenefits acted with fraud, malice and oppression, entitling ADP to an award of punitive

22   damages.

23                              **Third Claim for Relief**

24           **Unfair Competition (Cal. Bus. & Prof. Code § 17200) (against Zenefits)**

25           62.     ADP incorporates by reference each of the allegations in the above

26   paragraphs of this Complaint as though fully set forth herein.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1    63.    Defendants have engaged and continue to engage in unlawful, unfair, and

2    fraudulent business acts or practices, as described above.

3    64.    Defendants' unlawful, unfair, and fraudulent acts were committed in the

4    course of Defendants' business activities, many of those activities in competition with ADP.

5    65.    As a result of Defendants' ongoing unlawful, unfair, and fraudulent acts,

6    Defendants caused ADP to suffer harm in the marketplace and caused Defendants to unfairly

7    gain customers and goodwill in the marketplace.

8    66.    ADP seeks an injunction and restitution.

9    **Fourth Claim for Relief**

10    **False Advertising (Cal. Bus. & Prof. Code § 17500) (against Zenefits)**

11    67.    ADP incorporates by reference each of the allegations in the above

12    paragraphs of this Complaint as though fully set forth herein.

13    68.    Defendants have engaged in and continue to promulgate statements in

14    marketing and advertising publications to its customers that are untrue and misleading.

15    69.    Defendants knew, or by the exercise of reasonable care should have

16    known, that the statements were untrue and misleading.

17    70.    As a result of Defendants' ongoing false advertising, Defendants caused

18    ADP to suffer harm in the marketplace and caused Defendants to unfairly gain customers and

19    goodwill in the marketplace.

20    71.    ADP seeks an injunction and restitution.

21    **Fifth Claim for Relief**

22    **Violation of Lanham Act (15 U.S.C. § 1051 et seq.) (against Zenefits)**

23    72.    ADP incorporates by reference each of the allegations in the preceding

24    paragraphs of this Complaint as though fully set forth herein.

25    73.    Defendants made false statements of fact in commercial advertisements

26    about its own products and about ADP's products.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1        74.    The statements actually deceived or have the tendency to deceive a

2    substantial segment of their audience.

3        75.    The deception is material, in that it is likely to influence the purchasing

4    decisions of ADP's and Defendants' customers.

5        76.    Defendants caused their false statements to enter interstate commerce.

6        77.    ADP has been or is likely to be injured as a result of the false statements.

7    **Prayer for Relief**

8    WHEREFORE, ADP respectfully requests that the Court enter judgment on its

9    behalf adjudging and decreeing:

10        A.    That ADP recover damages in an amount to be determined at trial;

11        B.    That ADP be awarded punitive damages in an amount to be determined at

12    trial;

13        C.    That ADP be awarded injunctive relief as requested;

14        D.    That ADP be awarded restitution of all ill-gotten gains unjustly obtained

15    and retained by Defendant Zenefits through the acts complained of here;

16        E.    That ADP is entitled to pre-judgment and post-judgment interest on the

17    damages awarded;

18        F.    That ADP is entitled to recover its costs of this suit, including reasonable

19    attorneys' fees; and

20        G.    That ADP is entitled to receive such other or further relief as the Court

21    deems just and proper.

22    DATED: June 9, 2015              Morgan, Lewis & Bockius LLP

23

24                                By:_____*/s/ Robert A. Lewis*_____
                                Robert A. Lewis

25                                  Attorneys for Plaintiff ADP, LLC

26

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1    <u>DEMAND FOR JURY TRIAL</u>

2           In accordance with Fed. R. Civ. P. 38(b), Plaintiff ADP, LLC demands a trial by

3    jury on all issues triable by a jury.

4

5    DATED: June 9, 2015

6

7                              Morgan, Lewis & Bockius LLP

8

9
                               By:_____*/s/ Robert A. Lewis*_____
10                                        Robert A. Lewis
                                          Attorneys for Plaintiff
11                                        ADP, LLC

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF