MORGAN, LEWIS & BOCKIUS LLP
Robert A. Lewis (SBN 83630)
robert.lewis@morganlewis.com
Frank Kennamer (SBN 157844)
frank.kennamer@morganlewis.com
Geoffrey T. Holtz (SBN 191370)
geoffrey.holtz@morganlewis.com
Kristen A. Palumbo (SBN 215857)
kristen.palumbo@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA 94105
Telephone:  (415) 442-1000
Facsimile:  (415) 442-1001

Attorneys for Plaintiff
ADP, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADP, LLC, a Delaware limited liability company,<br><br>　　　　　　　Plaintiff,<br><br>　　vs.<br><br>YOURPEOPLE, INC., a Delaware corporation d/b/a/ Zenefits Insurance Services, and PARKER CONRAD, an individual,<br><br>　　　　　　　Defendants. | No. 15-cv-02560-VC<br><br>**PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS COMPLAINT PURSUANT TO RULE 12(b)(6)**<br><br>Date:　August 20, 2015<br>Time:　10:00 a.m.<br>Place:　San Francisco Courthouse,<br>　　　　Courtroom 4 – 17th Floor<br>Judge:　Hon. Vince Chhabria |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ........................................................................................................... 1

II. ARGUMENT .................................................................................................................. 1

    A. ADP Adequately Pleads Its Defamation Claim ..................................................... 2

        1. Defendants Made Representations of Fact, Not Opinion............................ 2

            a. General Tenor .................................................................................. 3

            b. Colorful Language ........................................................................... 4

            c. True or False .................................................................................... 5

        2. ADP is Not a Public Figure.......................................................................... 6

            a. ADP is Not an All-Purpose Public Figure ...................................... 7

            b. ADP is Not a Limited Public Figure ............................................... 7

                (1) There Was No Public Controversy When Defendants Made Their Defamatory Statements .................................... 8

                (2) There is No Nexus Between the Defamatory Statements and Any Public Controversy............................ 8

                (3) ADP Did Not Inject Itself Into Any Public Controversy ................................................................................. 9

    B. ADP's Complaint Sufficiently Pleads Intentional Interference ........................... 10

    C. ADP's Complaint Sufficiently Pleads Unfair Competition Law Violations ........ 11

    D. ADP Sufficiently Pleads False Advertising Violations ........................................ 13

III. CONCLUSION ............................................................................................................. 15

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Alborzian v. JPMorgan Chase Bank, N.A.*,
   235 Cal. App. 4th 29 (2015) .................................................................................................. 13

*Animal Legal Def. Fund v. HVFG LLC*,
   939 F. Supp. 2d 992 (N.D. Cal. 2013) ................................................................................... 15

*Balistreri v. Pacifica Police Dept.*,
   901 F.2d 696 (9th Cir. 1990) .................................................................................................... 1

*Berger v. Home Depot USA, Inc.*,
   741 F.3d 1061 (9th Cir. 2014) ................................................................................................ 12

*Brave New Films 501(c)(4) v. Weiner*,
   626 F. Supp. 2d 1013 (N.D. Cal. 2009) ................................................................................... 2

*Brown and Williamson Tobacco Corp v. Jacobsen*,
   714 F.2d 262 (7th Cir. 1983) .................................................................................................... 7

*Bruno & Stillman, Inc. v. Globe Newspaper Co.*,
   633 F.2d 583 (1st Cir. 1980) .................................................................................................... 7

*Bush v. Liberty Life Assurance Co. of Boston*,
   No. 14-cv-01507-YGR, 2015 WL 54418 (N.D. Cal. Jan. 2, 2015) .......................................... 2

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
   20 Cal.4th 163 (1999) ............................................................................................................ 11

*Gardner v. Martino*,
   563 F.3d 981 (9th Cir. 2009) ................................................................................................ 4, 5

*Gertz v. Robert Welch, Inc.*,
   418 U.S. 323 (1974) .................................................................................................................. 7

*Glob. Telemedia Int'l, Inc. v. Doe 1*,
   132 F. Supp. 2d 1261 (C.D. Cal. 2001) ................................................................................... 5

*Greenspan v. Admin. Office of the United States Courts*,
   No. 14-cv-2396 JTM, 2014 WL 6847460 (N.D. Cal. Dec. 4, 2014) ........................................ 1

*Jack Russell Terrier Network of N. Cal. v. Am. Kennel Club, Inc.*,
   407 F.3d 1027 (9th Cir. 2005) ................................................................................................ 15

*Jolley v. Chase Home Finance, LLC*,
   213 Cal. App. 4th 872 (2013) ........................................................................................... 11, 12

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) .................................................................................................. 12, 13

*Knievel v. ESPN*,
  393 F.3d 1068 (9th Cir. 2005) .......................................................................................................... 5

*Korea Supply Co. v. Lockheed Martin Corp.*,
  29 Cal.4th 1134 (2003) ................................................................................................................... 10

*Makaeff v. Trump Univ., LLC*,
  715 F.3d 254 (9th Cir. 2013) .................................................................................................. 7, 8, 9

*Mattel, Inc. v. MCA Records, Inc.*,
  28 F. Supp. 2d 1120 (C.D. Cal. 1998), *aff'd*, 296 F.3d 894 (9th Cir. 2002) ............................... 9

*McKell v. Washington Mut., Inc.*,
  142 Cal. App. 4th 1457 (2006) ...................................................................................................... 11

*Milkovich v. Lorain Journal Co.*,
  497 U.S. 1 (1990) ......................................................................................................................... 2, 3

*Nicosia v. De Rooy*,
  72 F. Supp. 2d 1093 (N.D. Cal. 1999) ............................................................................................ 5

*Obsidian Fin. Grp., LLC v. Cox*,
  740 F.3d 1284 (9th Cir. 2014) ......................................................................................................... 2

*Partington v. Bugliosi*,
  56 F.3d 1147 (9th Cir. 1995) ........................................................................................................... 3

*Pastoria v. Nationwide Ins.*,
  112 Cal. App. 4th 1490 (2003) ...................................................................................................... 12

*Peviani v. Nat. Balance, Inc.*,
  774 F. Supp. 2d 1066 (S.D. Cal. 2011) ......................................................................................... 15

*Ringler Assocs. Inc. v. Maryland Cas. Co.*,
  80 Cal. App. 4th 1165 (2000) .......................................................................................................... 3

*Sanders v. Walsh*,
  219 Cal. App. 4th 855 (2013) ...................................................................................................... 3, 6

*Southland Sod Farms v. Stover Seed Co.*,
  108 F.3d 1134 (9th Cir. 1997) ....................................................................................................... 15

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Sybersound Records, Inc. v. UAV Corp.*,
    517 F.3d 1137 (9th Cir. 2008) .................................................................................... 12

*United States v. Redwood City*,
    640 F.2d 963 (9th Cir. 1981) ....................................................................................... 1

*Usher v. City of Los Angeles*,
    828 F.2d 556 (9th Cir. 1987) ....................................................................................... 2

*Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*,
    42 Cal. App. 4th 507 (1996) ...................................................................................... 10

*Wilbanks v. Wolk*,
    121 Cal. App. 4th 883 (2004) ...................................................................................... 6

**STATUTES**

Cal. Bus. & Prof. Code
    § 17200 ......................................................................................................................... 1
    § 17500 ................................................................................................................... 1, 13

Lanham Act, 15 U.S.C.
    § 1051, *et seq.* ................................................................................................ 1, 13, 15

**RULES AND REGULATIONS**

Fed. R. Civ. P.
    8(a)(2) ......................................................................................................................... 11
    9(b) ............................................................................................................................. 12
    12(b)(6) ........................................................................................................................ 1

## I. INTRODUCTION

Zenefits and its CEO Parker Conrad used conventional means—a June 5, 2015 email to the clients it shared with ADP—and a more novel approach—an online petition they started—to lie and defame ADP. While they took pains to try to create the appearance of an advocacy piece or public plea, these contrivances cannot and do not excuse the lies that are the basis of ADP's defamation claim.

Nor do Defendants' after-the-fact assertions that they were engaged in a public debate with a "public figure" shield them from ADP's defamation claim. The law confirms that in this private commercial dispute ADP is no public figure, and the facts ADP has pleaded, and those included in the materials Defendants seek to have judicially noticed, establish that there is no matter of "public interest" despite Defendants' strained efforts to try to create one.

ADP's intentional interference claim is premised not only on its defamation claim but also on Defendants' "false and misleading statements" as catalogued in the Complaint. ADP's Complaint pleads facts sufficient to establish a claim under California Business & Professions Code Section 17200 three times over—an unlawful, unfair and fraudulent business practice. And finally, ADP's claims for false advertising under Section 17500 and the Lanham Act do not, as Defendants argue, come within the mere "advertisement or promotion" exception, and ADP has specifically alleged injury from Defendants' conduct.

Defendants' motion to dismiss should be denied.

## II. ARGUMENT

The dismissal that Defendants seek under Federal Rule of Civil Procedure 12(b)(6) is proper only in "extraordinary" cases. *Greenspan v. Admin. Office of the United States Courts*, No. 14-cv-2396 JTM, 2014 WL 6847460, at *4 (N.D. Cal. Dec. 4, 2014) (citing *United States v. Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981)). The Ninth Circuit mandates that courts should grant a 12(b)(6) motion only where a plaintiff's complaint lacks a "cognizable legal theory" or sufficient facts to support a cognizable legal theory. *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). To evaluate a motion to dismiss, the court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the

nonmoving party." *Bush v. Liberty Life Assurance Co. of Boston*, No. 14-cv-01507-YGR, 2015 WL 54418, at *2 (N.D. Cal. Jan. 2, 2015) (citing *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987)).  "Any existing ambiguities must be resolved in favor of the pleading." *Id.* (citation omitted).  In sum, the question presented by a motion to dismiss is not whether the plaintiff will prevail in the action, but whether the plaintiff is entitled to offer evidence in support of the claim. *Brave New Films 501(c)(4) v. Weiner*, 626 F. Supp. 2d 1013, 1015 (N.D. Cal. 2009).

Applying this established law, the Court should deny Defendants' motion.

### A.   ADP Adequately Pleads Its Defamation Claim

Defendants assert two arguments against ADP's pleading of its defamation claim: (1) that the defamatory statements are mere "opinion" and thus non-actionable, and (2) that ADP is a First Amendment "public figure" that must plead "actual malice" to successfully plead its claim.  Both arguments fail.

#### 1.   Defendants Made Representations of Fact, Not Opinion

Defendants argue at length that the statements that form the basis of ADP's defamation claim are protected as non-actionable opinion.  On their face, the 11 statements at issue in Defendants' June 5 email and an additional two in the "petition" are ones of fact, not opinion.[1]

In any event, although Defendants attempt to create a sharp dichotomy between opinion and fact, the Supreme Court has rejected such an approach. *See Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18 (1990) (The Court did not "intend[] to create a wholesale defamation exemption for anything that might be labeled 'opinion.'").  Indeed, there is no blanket Constitutional protection for "opinions." *Obsidian Fin. Grp., LLC v. Cox*, 740 F.3d 1284, 1293 (9th Cir. 2014) (citing *Milkovich*, 497 U.S. at 18).  Doing so would "ignore the fact that expressions of 'opinion' may

---

[1]  Summarized and abbreviated as follows: (1) "without your permission, ADP systematically deactivated"; (2) "The reason for this is … build software to compete"; (3) "The reason for this is … do anything they can to impede"; (4) "claiming they are taking this action for 'security' reasons"; (5) "What Zenefits does is no different"; (6) "Zenefits is still completely compatible"; (7) "All they've done is make it more inconvenient for you"; (8) "ADP has decided to create more work for their own clients in order to attack Zenefits"; (9) "outrageous … making these changes without your permission"; (10) "unethical … making these changes without your permission"; (11) "ADP … is creating this complication for you in their attempt to block Zenefits' service"; (12) "ADP … has cut thousands of their small business customers off from using Zenefits"; and (13) "ADP client can set up anyone in the world to administer their payroll -- except those with a Zenefits email account."

often imply an assertion of objective fact." *Milkovich*, 497 U.S. at 18.  For example:

> If a speaker says, "In my opinion John Jones is a liar," he implies a knowledge of facts which lead to the conclusion that Jones told an untruth.  Even if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact.  Simply couching such statements in terms of opinion does not dispel these implications; and the statement, "In my opinion Jones is a liar," can cause as much damage to reputation as the statement, "Jones is a liar."

*Id.* at 18-19.  Consequently, even a statement of opinion may be actionable if it "implies the allegation of undisclosed defamatory facts as the basis for the opinion." *Ringler Assocs. Inc. v. Maryland Cas. Co.*, 80 Cal. App. 4th 1165, 1181 (2000); *see also Sanders v. Walsh*, 219 Cal. App. 4th 855, 862 (2013) (defamatory statements "must contain a provable falsehood").

Without a bright line rule to separate opinion and fact, Defendants concede that courts instead apply a totality of the circumstances test through which they examine "(1) whether the general tenor of the entire work negates the impression that the defendant was asserting an objective fact, (2) whether the defendant used figurative or hyperbolic language that negates that impression, and (3) whether the statement in question is susceptible of being proved true or false." *Partington v. Bugliosi*, 56 F.3d 1147, 1153 (9th Cir. 1995).  While Defendants quote the right test, they flunk it.

          **a.**     **General Tenor**

Defendants argue that their June 5 email and online petition are mere "position pieces" and that the statements that are the basis of ADP's defamation claim (Complaint for Damages and Injunctive Relief ("Compl.") ¶¶ 31-41), are but part of "an argument intended to sway [readers], not objective assertions of fact." (Defendants' Motion to Dismiss Complaint Pursuant to Rule 12(b)(6) ("MTD") 7:24-8:2)  But as part of their "argument" Defendants included statements that they portray as "objective assertions of fact."  For example:

- The Defendants in their June 5 email state to clients that ADP took its protective measures "without your permission." (Compl. ¶ 31)  Defendants assert as a fact that ADP did not have their clients' "permission."  This is an assertion of objective fact – either ADP had permission to cut off Zenefits or it did not.

- Similarly, Defendants state that ADP's professed security reasons for this action were "clearly not true."  (Compl. ¶ 33)  Again, this is either true or not.[2]

- And Defendants say ADP permits other third-party bookkeepers and accounting firms to access ADP even though "[w]hat Zenefits does is no different."  (Compl. ¶ 34)  This statement, too, can also be easily proven true or false:  either there is "no differen[ce]" between what Zenefits did (automated process regarding many ADP clients) and what third-party bookkeepers and accounting firms do (manual or "login" access to the data of a single client).

Defendants' statements were false, knowingly so, and all of the context in the world does not make them true or innocent or mere parts of "position pieces."

### b. Colorful Language

Defendants argue that their inclusion of "hard-hitting" and "figurative" language amidst their objectively false statements "requires a finding that the entire statement be considered non-actionable opinion."  (MTD 8:18-21)  But despite claiming that statements should be read contextually and in the totality of the circumstances (MTD 7:10-13), Defendants parse specific sentences—and in some instances specific words—that contain colorful language to suggest that *other* statements are therefore not factual.  To this end, for example, Defendants highlight the words "outrageous" and "unethical" and the phrase "corporate chess game."  (MTD 8:18-20)  Defendants miss the mark.  Ripping those words out of context does not assist the court in evaluating how a reasonable reader would view Defendants' statements.  The two cases Defendants cite for their purported "colorful language" exception are wide of the mark.

In *Gardner v. Martino*, a consumer complained on a talk radio show about a jet ski and the company she had purchased it from; after the consumer explained the trouble she had, the host said the company "sucks" and was "lying."  The court first explained that the basis for these

---

[2] Although Defendants argue they could not know ADP's true motivation, and thus this cannot be an actionable statement (MTD 9:8-9), this ignores the surrounding context that Defendants otherwise urge the Court to consider.  Because Defendants contend they were singled out, given no other identified third party was denied access (MTD 4:14-17) it would be reasonable for a factfinder to conclude that Defendants possess some unique insight into ADP's actions or, at the very least, have information based upon their relationship with ADP.

statements was outlined in the same call, and moreover, that they were the "type of obvious exaggeration[s] *generally employed on Martino's program . . . .*" 563 F.3d 981, 989 (9th Cir. 2009) (emphasis supplied). Surrounding context, not the use of hyperbole, forms the basis of the decision. So, too, in *Knievel v. ESPN*, where a photograph of Evel Knievel with his wife and another woman was accompanied by the words "Evel Knievel proves that you're never too old to be a pimp." 393 F.3d 1068, 1071 (9th Cir. 2005). There, Knievel was challenging the rhetorical statement itself—the slang "pimp." But the court found it was intended as humorous, not factual, looking at the other "lighthearted, jocular" content and slang used throughout the site. *Id.* at 1077. Neither case suggests, much less holds, that Defendants' inclusion of "colorful language" amidst its defamatory statements can insulate it from a defamation claim.

### c. True or False

Here, Defendants seek refuge in metaphysics, arguing that their statements "are not provable as true or false" or "are value judgments not capable of truth or falsity" or are "far too general to support a conclusion either way." (MTD 9:10-17) This is wrong, for several reasons.

First, Defendants' statements that ADP acted "without [its clients'] permission," that its security concerns were "clearly not true," and that "what Zenefits does is no different" from what third-party bookkeepers and accounting firms do, are each objectively provable as true or false, contain no "value" judgments and are (and were intended to be) specifically targeted.

Second, Defendants' "petition" on change.org does not state that its contents are subjective and not based in fact. Indeed the name of the website alone conveys a level of gravitas lacking in a Craigslist "Rant and Rave," "Raging Bull Message Boards," or even someone's personal website. *See Glob. Telemedia Int'l, Inc. v. Doe 1*, 132 F. Supp. 2d 1261, 1264, 1267 (C.D. Cal. 2001) (finding anonymous statements made in the "milieu" of an unmonitored chat room—"an Internet bulletin board"—did not constitute defamatory statements); *Nicosia v. De Rooy*, 72 F. Supp. 2d 1093, 1101 (N.D. Cal. 1999) (finding readers are unlikely to view statements made on personal website and internet discussion groups as factual). Styled as a petition, Defendants urge individuals to take action on the basis of the information it provides to its readers. (Compl. ¶¶ 37-44) This is more than a website soliciting cathartic over-sharing. Nor can utilizing a "petition"

website give someone *carte blanche* for defamation.

Third, Defendants ignore the ways in which, as here, the identity of the speaker also influences how a reader will interpret whether a statement seeks to assert the truth. "An accusation that, if made by a layperson, might constitute opinion may be understood as being based on fact if made by someone with specialized knowledge of the industry." *Wilbanks v. Wolk*, 121 Cal. App. 4th 883, 904 (2004) (finding statements made by a "consumer watchdog" that a company was unethical and "provided incompetent advice" were actionable). Here, Defendants did not make statements anonymously or from the posture of a disgruntled consumer or lay outsider. Rather, Defendants—industry insiders with an alleged "partnership" with ADP— claimed to have specialized knowledge, making their statements about ADP appear credible to readers. And Defendants *used* that specialized knowledge and their position of trust when soliciting attention to their statements. Thus, for example, they notified their own customers of the petition through Defendant Conrad's June 5 email; and on the website Defendants first explain who they are, then falsely state that ADP was required to obtain the permission of its customers before it restricted Zenefits' access—ADP "has cut thousands of their small business customers off from using Zenefits . . . without permission[.]" (Compl. ¶¶ 37-38) This is a statement, like the others, that is objectively capable of being determined true or false.

\*   \*   \*

Whether the statements that form the basis of ADP's defamation claim *could* be interpreted as nonactionable opinion is a question for the trier-of-fact and thus inappropriate for a 12(b)(6) motion. *See Sanders*, 219 Cal. App. 4th at 863 ("The question is whether a reasonable fact finder could conclude the published statement declares or implies a provably false assertion of fact.").

### 2. ADP is Not a Public Figure

Next up, Defendants argue that ADP is a "public figure" subject to the heightened requirement of pleading facts that would show that Defendants acted with "actual malice." But ADP is not a First Amendment "public figure," and the "actual malice" standard does not apply.[3]

---

[3] Should the Court disagree, ADP respectfully requests leave to amend to plead facts that will demonstrate actual malice.

While Defendants are not explicit, they argue that ADP is either an "all-purpose" public figure or a "limited" public figure, either of which is subject to the "actual malice" pleading standard. *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 265 (9th Cir. 2013) (citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345 (1974)). As we demonstrate, ADP is neither.

### a. ADP is Not an All-Purpose Public Figure

Defendants cannot and do not cite a single case that holds a corporation to be an all-purpose public figure based on that corporation's success in its industry, its excellent reputation for customer service, or its use of a "client email communication tool." But stripped of flourishes, these are the only facts upon which Defendants base their argument that ADP is an all-purpose public figure. (*See* MTD 10:5-7, 10:17-26.) Indeed, Defendants' argument would have *all* public companies meet the heightened "actual malice" standard irrespective of the nature of the defamatory statement or the intended audience.

Defendants' sole legal authority for the proposition "that there 'is no reason to classify a large corporation as a private person'" is a Seventh Circuit case. *Id*. But the court in that case made that statement only "in passing," not based on its facts, *Brown and Williamson Tobacco Corp v. Jacobsen*, 714 F.2d 262, 273 (7th Cir. 1983), and instead relied upon a First Circuit case *that held the opposite*: "we suspect that many, if not most, corporations have no particular advantage over private individuals … [a]nd the mere selling of products itself cannot easily be deemed a public controversy." *Bruno & Stillman, Inc. v. Globe Newspaper Co.*, 633 F.2d 583, 589-90 (1st Cir. 1980). The same is true here. Nothing in ADP's Complaint—or the matter that Defendants seek to have judicially noticed—suggests, much less establishes, that ADP is an "all purpose" public figure.[4]

### b. ADP is Not a Limited Public Figure

Nor is ADP a limited public figure. Defendants' attempt to bootstrap their defamatory statements into a "public controversy" but the argument is circular—A defames B, invites public

---

[4] If the fact that ADP is "widely known" and has "broad access to the channels of communication" is the basis of the public figure determination (MTD 11:2-3), where is the line drawn? All S&P 500 companies are public figures? All NASDAQ listed companies? All companies that are the subject of a "public" dispute? There is no authority or basis for Defendants' rhetorical argument.

comment about it and defense by B, and then asserts that B's defamation claim involves a matter of "public controversy." The law, and common sense, are to the contrary. Perhaps because it cannot meet the applicable test, Defendants do not supply it. The analysis of whether a corporation is a limited public figure requires three things: (1) that a public controversy exists over the subject matter of the defamatory statements when the statements were made; (2) that the alleged defamation is related to the plaintiff's position in the controversy; in other words, there is a nexus between the defamatory statements and any public controversy; <u>and</u> (3) that plaintiff did not voluntarily inject itself into the controversy for the purpose of influencing the controversy's ultimate resolution. *Makaeff*, 715 F.3d at 266. None of these factors supports Defendants' argument that ADP is a limited public figure.

### (1) There Was No Public Controversy When Defendants Made Their Defamatory Statements

The dispute between ADP and Defendants was not a "public controversy" when Defendants fired off their defamatory email and put up the online "petition" that recycled some of their defamatory statements and added a few new ones. The "limited public figure" analysis should end there.

Indeed, on June 5, 2015, at the time Defendants made the statements that are the subject of ADP's defamation claim, there was no *public* controversy *of any kind*. To the contrary, Defendants go to great lengths to characterize how cooperative ADP and Zenefits were until June 2015. (Defendants' Request for Judicial Notice, Ex. 2; MTD 5:10-13)

As ADP alleges—and as Defendants cannot dispute—the "controversy" went "public" only when Defendants took it public. Defendants cannot manufacture the subject of the "controversy" (their defamatory statements), disseminate them in an online "petition" they started, and then assert that a "public controversy" exists in an attempt to insulate themselves from liability.

### (2) There is No Nexus Between the Defamatory Statements and Any Public Controversy

Nor is there any "nexus" between Defendants' statements and any pre-existing "public controversy." While Defendants may seek to characterize their June 5 email and their online

"petition" as mere responses to ADP's Small Business Services June 5 email to their shared customers (something refuted by the text of each), that does not (1) create a pre-existing public controversy or (2) insulate Defendants' defamatory statements made in response to ADP's statements to their shared customers (which Defendants do not—and could not—suggest are "defamatory"). Any "nexus" that may exist is the result of Defendants' defamatory statements that form the basis of ADP's Complaint and the so-called "public controversy" that Defendants contrived to publicize them.

### (3) ADP Did Not Inject Itself Into Any Public Controversy

The third requirement that must be satisfied to establish that ADP is a limited purpose public figure is voluntarily public engagement on precisely the same issue that is the subject of the defamation claim. *See Mattel, Inc. v. MCA Records, Inc*., 28 F. Supp. 2d 1120, 1162 (C.D. Cal. 1998), *aff'd*, 296 F.3d 894 (9th Cir. 2002) (MCA Records considered a public figure after "a frontal assault in the news media" that included "sen[ding] out press kits . . . to 800 or more media outlets" in an effort to defend and promote the popular song "Barbie Girl" and to "thrust itself into the forefront of the dispute"); *Makaeff*, 715 F.3d at 267 (Trump University considered a limited public figure because, after aggressively marketing seminars that encouraged participating in the market for foreclosed properties, "a public debate existed regarding its . . . educational practices," and there was a nexus between the allegedly defamatory comments and Trump University's advertising of the controversial seminar strategies.).

Here, ADP did not insert itself into any controversy. Rather, as Defendants elsewhere concede (*see* Anti-SLAPP Mot. 12:2-3), ADP's sole public "engagement" was its email to common clients relating to potential security and information accuracy issues and its subsequent response to defamatory statements Defendants included in their online petition.[5] This is not "inserting" or "thrusting" oneself into a controversy.

\*   \*   \*

Defendants' "public figure" argument boils down to its assertion that "[i]n sum, ADP is

---

[5] Notably, Defendants changed the petition by removing several of the defamatory statements after ADP complained. This partial retraction does not, of course, alter the defamatory nature of the statements in the first instance.

widely known" and "has broad access to the channels of communication." (MTD 11:2-3) This is not enough to establish that ADP is a public figure for defamation purposes. Indeed, application of the three-part test confirms that ADP is merely the subject of, and responder to, Defendants' defamatory statements.

### B. ADP's Complaint Sufficiently Pleads Intentional Interference

Defendants do not disagree—nor can they—that defamation constitutes sufficiently "wrongful" conduct to form the basis of a claim for intentional interference with prospective economic relations under California law. *See, e.g.*, *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1159 (2003) ("[A]n act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard."). As the Complaint establishes, and as demonstrated above, II.A, ADP has sufficiently pleaded that Defendants defamed ADP through their June 5 email and "petition." But ADP has also stated an interference claim *independent* of its defamation claim by alleging that Defendants made "false and misleading statements intended to harm ADP." (Compl. ¶¶ 36-37)

Defendants also argue that ADP has failed to meet a non-existent, heightened pleading standard for intentional interference claims. According to Defendants, "ADP must identify, by name, the specific opportunities that were in fact lost as a result of the allegedly prescribed conduct." (MTD 12:2-5) But the only case Defendants cite for this standard, *Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*, involves a trial court's decision to limit the plaintiff's *offer of proof at trial* on its intentional interference claim, instructing the jury that "plaintiff must show a specific intent to interfere with a specific prospective relationship not with a class of unknown investors or purchasers." 42 Cal. App. 4th 507, 520 & n.15 (1996). That a plaintiff must *prove* "interference with *existing* noncontractual relationships which hold the promise of future economic advantage," *id.* at 524, says nothing about what level of detail is required at the *pleading* stage regarding those relationships; and it certainly does not dictate identification of the *noncontractual* relationships by name as Defendants assert. *Cf. id.* at 526–27.

While Defendants' attempt to confuse proof with pleading is without merit, ADP has pleaded more than an amorphous "lost opportunity" or "purely hypothetical relationship," *id.* at

1   522, in any event.  ADP alleges economic *relationships* with current and prospective purchasers of
2   ADP's services.  (*See* Compl. ¶¶ 52-61.)  Defendants' "petition" garnered signatures and
3   comments of *both current and potential* ADP clients.  (*Id.* ¶ 42)  ADP has pleaded that Defendants
4   also offered to pay ADP clients to switch to another payroll provider (*id.* ¶ 36), and that a current
5   client notified ADP that it was "considering switching from ADP to Intuit, citing to Mr. Conrad's
6   email" (*id.* ¶ 44).  These allegations, taken as true as they must be, are sufficient to plead an
7   interference claim.  *See* Fed. R. Civ. P. 8(a)(2).

        **C.**     **ADP's Complaint Sufficiently Pleads Unfair Competition Law Violations**

California's unfair competition law prohibits "any unlawful, unfair <u>or</u> fraudulent business act <u>or</u> practice and unfair, deceptive, untrue or misleading advertising . . . ."  *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163, 192 (1999) (emphasis supplied).  Defendants acknowledge that a claim for unfair competition may be brought under any of these three prongs.  MTD 12:7-11; *see also McKell v. Washington Mut., Inc.*, 142 Cal. App. 4th 1457, 1471 (2006) ("Because the statute is framed in the disjunctive, a business practice need only meet one of the three criteria to be considered unfair competition.")  California's unfair competition law is intentionally broad as "[i]t would be impossible to draft in advance detailed plans and specifications of all acts and conduct to be prohibited, since unfair or fraudulent business practices may run the gamut of human ingenuity and chicanery."  *Cel-Tech*, 20 Cal.4th at 181.

Truncating the California Supreme Court's language from *Cel-Tech*, Defendants argue that a claim for "unfair" business practices can <u>only</u> survive by alleging that Defendants "threaten[] an incipient violation of an anti-trust law."  (MTD 12:13-15)  This misstates the Court's holding:

> When a plaintiff who claims to have suffered injury from a direct competitor's "unfair" act or practice invokes section 17200, the word "unfair" in that section means conduct that threatens an incipient violation of an antitrust law, *or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition.*

*Cel-Tech*, 20 Cal.4th at 187 (emphasis supplied).  The portion of the *Cel-Tech*'s discussion that Defendants omit states the basis of ADP's allegation of an "unfair" business practice.  And there is ample case law to support it, in addition to *Cel-Tech.  See, e.g., Jolley v. Chase Home Fin., LLC*,

213 Cal. App. 4th 872, 906-07 (2013); *Pastoria v. Nationwide Ins.*, 112 Cal. App. 4th 1490, 1497-98 (2003) ("unfair" practice is one that offends established public policy, is immoral, unethical, oppressive, unscrupulous, is substantially injurious to consumers, <u>or</u> that has an impact on the victim that outweighs the defendants' reasons, justifications and motives for the practice). ADP's claim is that Defendants threaten fair competition by making false public statements about another company on the internet and in communications to both customers and the general public. In making these statements, Defendants ignored or distorted ADP's concerns over security and information accuracy, operational integrity and impact on the server that ADP raised regarding Defendants' RUN access. (Compl. ¶¶ 17-23)  No more is required to plead an unfair competition claim under the UCL.

Similarly, ADP's complaint sufficiently pleads fraudulent business practices under the UCL. "[F]raudulent acts are ones where members of the public are likely to be deceived." *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1152 (9th Cir. 2008). While ADP agrees that Rule 9(b)'s particularity requirement applies to its UCL's fraud claims, ADP's Complaint identifies the "who, what, when, where, and how of the misconduct alleged" such that Defendants must respond to the alleged misconduct. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009); *see also Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1068 (9th Cir. 2014) ("Actual falsehood, the perpetrator's knowledge of falsity, and perhaps most importantly, the victim's reliance on the false statements—each of which are elements of common-law fraud claims—are not required to show a violation of California's UCL."). Included in ADP's Complaint are the content, timing and form of the numerous false statements Defendants made to customers and the public at large, including for example:  the June 5 email sent by Defendant Conrad falsely stated Zenefits is "integrated with ADP's RUN" (Compl. ¶¶ 18-21); that "ADP took the protective measures to block [Defendants'] automated scraping of data from ADP RUN to protect the continuing service without [client] permission" in order to "impede Zenefits" (*id.* ¶¶ 30-34). Conrad's email referenced a "petition" on change.org with further false statements, including that ADP "has cut thousands of their small business customers off from using Zenefits to automate their time-consuming payroll administration work . . . without permission from these small

1  businesses, and also without notifying Zenefits, who has partnered with ADP amicably since we
2  were founded." (*Id.* ¶¶ 37-41)  ADP also has alleged that these statements deceived customers and
3  the public, with one ADP client affirmatively stating he was considering switching payroll
4  providers.  (*See id.* ¶¶ 42-45; *see also id.* ¶¶ 67-70 (pleading false advertising).)  Contrast this with
5  the generalized pleadings in *Kearns*, in which the plaintiff merely alleged the defendant's intent to
6  conceal from customers that CPO vehicles were essentially the same as ordinary used vehicles.
7  567 F.3d at 1127.

8      Defendants also argue that ADP's fraudulent business practice claim cannot survive
9  because ADP did not plead that "the fraudulent misrepresentations were likely to deceive
10  consumers in a way that caused ADP to lose money or property."  (MTD 12:19-22)  While
11  Defendants are unclear, its single case citation suggests that it means to challenge ADP's standing
12  to bring a UCL claim for fraudulent business practices by challenging ADP's economic losses.
13  *See Alborzian v. JPMorgan Chase Bank, N.A.*, 235 Cal. App. 4th 29, 38 (2015) ("Plaintiffs may
14  invoke the UCL only if they suffer (1) economic loss (that is, 'a loss or deprivation of money or
15  property'), (2) caused by the unlawful business practice.").  But ADP has pleaded such injury as
16  well:  "As a result of Zenefits' false and defamatory statements, ADP has been forced to incur
17  costs to attempt to correct the false statements with its customers and the marketplace, has suffered
18  injury to its reputation and has been informed by customers that they are switching payroll
19  providers on the basis of Zenefits' statements."  (Compl. ¶¶ 45, 65)

20      The Court should deny Defendants' motion to dismiss ADP's unfair competition claim.

21      **D.**    **ADP Sufficiently Pleads False Advertising Violations**
22      ADP states two claims based on false statements Defendants made in commercial
23  advertisements, one for false advertising under Cal. Bus. & Prof. Code § 17500 and the other for
24  violating the Lanham Act, 15 U.S.C. § 1051, *et seq.*  Defendants challenge them together, arguing
25  (1) neither the June 5 email nor "petition" are commercial advertisements or promotions; (2) any
26  statements about Defendants' services were "mere puffery;" and (3) ADP lacks standing under the
27  Lanham Act.  Defendants are wrong on all counts.
28

1        First, both the change.org petition and the June 5 email were plainly commercial
2   statements made by Zenefits or Zenefits' CEO Conrad about Defendants' products, in derogatory
3   relation to ADP. Defendants targeted these statements to existing ADP small-business clients.
4   Defendants' June 5 email seeks to assure clients that "nothing will interrupt your use of Zenefits"
5   and that it is "working on other options for restoring automated payroll." (MTD 4:21-23) The
6   direct inference is that Defendants sought to repair their own reputation after running into
7   problems with ADP regarding issues of operational integrity, security and information accuracy in
8   order to increase—or at least sustain—Zenefits' business. They did so at the expense of ADP,
9   blaming ADP for disruptions in Defendants' services and actively encouraging those existing
10  small business clients to leave ADP. Indeed, the June 5 email and the "petition" offer $1000 to
11  clients who switch their payroll solution from ADP to another vendor, in addition to offering
12  assistance with the payroll provider switch. (MTD 5:1-3) The $1000 communicated a
13  commercial transaction, plain and simple—an offer that can be accepted with "instructions . . . in
14  our follow up communication." (*Id.*) While Defendants argue loftily that the documents are "part
15  of a public debate regarding ADP's actions locking in the data of their mutual clients" (MTD
16  13:25-28), neither the change.org petition nor the June 5 email say anything about "locking in
17  data." Indeed, neither document could be part of a "public debate" because there was no "debate,"
18  public or otherwise. Defendants' communications involved their own clients and their attempt to
19  persuade them to leave ADP.
20       Second, Defendants' claim that their statements were "mere puffery"—and thus,
21  nonactionable—cannot withstand scrutiny. Both the change.org petition and the June 5 email are
22  commercial speech that is subject to both California's false advertising law and the Lanham Act.
23  For example, the assertion that Zenefits is "all integrated with your favorite platforms" is not
24  "mere puffery" but instead an actionable assertion. (MTD 14:2-18) Defendants suggest
25  integration is a generalized characteristic, not relied upon by consumers when making decisions,
26  but the plain meaning of the word "integrated" requires, at a minimum, that both parties to the
27  integration be aware of the integration. Zenefits knew that it was not integrated with ADP RUN,
28  and ADP's Complaint alleges that Defendants knew that no agreement to integrate with ADP

1 RUN had been reached. (Compl. ¶¶ 18-20) Accordingly, the assertion of integration with ADP is not mere puffery, but a misrepresentation (or "misdescription") that is capable of being proved—it either is or, as ADP alleges, is not true. *Peviani v. Nat. Balance, Inc.*, 774 F. Supp. 2d 1066, 1072 (S.D. Cal. 2011) ("[M]isdescriptions of specific or absolute characteristics of a product are actionable.") (citing *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir. 1997)).

Third, ADP has sufficiently alleged that Defendants actively attempted to channel customers away from ADP by, among other acts, offering ADP clients $1000 to switch to a competing payroll provider. (MTD 5:1-3) ADP has alleged that Defendants' statements misrepresented ADP RUN and encouraged ADP clients to leave it; that ADP has been forced to incur costs to retain certain clients; and that ADP has been informed by clients that they are switching payroll providers on the basis of Defendants' statements. (Compl. ¶ 45) This is a sufficient allegation of harm to satisfy the Lanham Act's standing requirement. *Animal Legal Def. Fund v. HVFG LLC*, 939 F. Supp. 2d 992, 1000 (N.D. Cal. 2013) (a plaintiff must show: "(1) a commercial injury based upon a misrepresentation about a product; and (2) that the injury is 'competitive' or harmful to the plaintiff's ability to compete with the defendant.") (citing *Jack Russell Terrier Network of N. Cal. v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1037 (9th Cir. 2005)).

### III. CONCLUSION

For the foregoing reasons, ADP respectfully requests that Defendants' motion be denied. Should the Court grant it in any respect, ADP requests leave to amend its Complaint.

Dated: July 21, 2015                                    MORGAN, LEWIS & BOCKIUS LLP

                                                        By: /s/ Robert A. Lewis
                                                            Robert A. Lewis
                                                            Attorneys for Plaintiff ADP, LLC